IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| GOLDEN BEAR INSURANCE COMPANY, | CV 25-71-BLG-DWM CV 25-73-BLG-DWM |
| Plaintiff/Counter-Defendant, | |
| vs. | ORDER |
| SBD ENTERPRISES, INC. d/b/a AMERICA WILD WEST, | |
| Defendant/Counter-Claimant, | |
| SBD ENTERPRISES, INC. d/b/a AMERICA WILD WEST, | |
| Third-Party Plaintiff, | |
| vs. | |
| FMSI UPPER PLAINS, L.C. d/b/a REVO INSURANCE ALLIANCE, | |
| Third-Party Defendant. | |

These cases arise out of two firearm-related incidents that occurred at America Wild West bar in Billings, Montana in February 2023. On the night of February 11, 2023, Beau Harlan Beaumont was fatally shot in the parking lot by another patron, Xavier Buffalo, after the two got in an altercation and Buffalo was

1

removed from the bar. (*See* CV 25–71–BLG–DWM, Doc. 1.) On the night of February 22, 2023, bartender David Simmons pointed a handgun at patrons Derek Coffman and Guadalupe Garza and fired at least once, though no one was struck. (*See* CV 25–73–BLG–DWM, Doc. 1.)[1] Subsequently, lawsuits were filed by Beaumont's Estate and by Coffman and Garza against SBD Enterprises, Inc. d/b/a "America Wild West" ("SBD Enterprises") in Montana state court ("Underlying Actions"). (*See* Doc. 1-1.) SBD Enterprises notified its insurer, Golden Bear Insurance Company ("Golden Bear"), of the Underlying Actions, seeking defense of and indemnity for the claims. Golden Bear denied coverage in both instances, citing the assault and battery exclusion in the Golden Bear Policy. (*See* Doc. 1-2.)

In May 2025, Golden Bear filed two declaratory judgment actions in this Court, seeking a determination that it has no duty to defend or indemnify SBD Enterprises in the Underlying Actions. (Doc. 1.) In response, SBD Enterprises filed a Counterclaim against Golden Bear and a Third-Party Complaint against the insurance agency through which it purchased the Golden Bear Policy, FMSI Upper Plains, L.C. d/b/a Revo Insurance Alliance ("Revo"). (Doc. 24.) That pleading alleges claims of both negligence and negligent misrepresentation against Revo if it is determined that the Golden Bear Policy does not provide coverage for the Underlying Actions and seeks to hold Golden Bear vicariously liable for that

---

[1] At this point, the docket numbers are consistent across both cases.

2

conduct on the basis that Revo was acting as Golden Bear's agent.  (*Id.*)  On April 24, 2026, Revo answered.  (Doc. 42.)

In January 2026, Golden Bear filed a motion to dismiss SBD Enterprises' Counterclaim and Third-Party Complaint, arguing that the Counterclaim should be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and that the Third-Party Complaint is improper under Rule 14(a) of the Federal Rules of Civil Procedure.  (Doc. 25.)  That motion is denied.

## ANALYSIS

## I.      Counterclaim – Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Dismissal is appropriate "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal quotation marks omitted).  At this stage of the proceeding, the plaintiff's

3

allegations are assumed to be true and construed in its favor. *See Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114 (9th Cir. 2021).

Here, SBD Enterprises had alleged in its Third-Party Complaint against Golden Bear that "Revo was acting as Golden Bear's agent in selling the [Golden Bear] Policy to SBD [Enterprises]" and that "Golden Bear is vicariously liable to SBD [Enterprises]." (Doc. 24 at ¶¶ 34–35.) Golden Bear argues that these legal conclusions do not allege any specific conduct or agreement demonstrating the purported agency relationship between Revo and Golden Bear. In response, SBD Enterprises argues that it has sufficiently pled an agency relationship because the general background section of its pleading alleges that "Revo was Golden Bear's agent for the purposes of selling the Policy to SBD [Enterprises]," Revo collected a $30,000 premium, and the policy was underwritten by Golden Bear. (*Id.* ¶¶ 7–9.) SBD Enterprises maintains that these allegations are consistent with Montana law, which provides that "a soliciting agent of an insurance company is the agent of the insurer and not of the insured for the purpose of soliciting and procuring the insurance and preparing the application." *Marie Deonier & Assocs. v. Paul Revere Life Ins. Co.*, 9 P.3d 622, 634 (Mont. 2000) (quoting 16 J. Appleman's Ins. Law & Prac. §§ 8696–97 (1981)).

Golden Bear's reply to this argument is two-fold. First, Golden Bear argues that because the general factual allegations were not specifically incorporated into

4

the counterclaim against Golden Bear, they cannot be relied on here. This argument is unpersuasive. To be sure, the inclusion of general factual allegations divorced from a specific claim can defy the requirement that pleading contain a "short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). But that concern generally regards "shotgun pleadings," or when "a complaint presents broad allegations in an 'everyone did everything' manner, making it difficult for defendants to discern what alleged violation is tied to which actor." *Potter v. Ethicon, Inc.*, 2021 WL 6498267, at *2 (D. Mont. Feb. 19, 2021) (quoting *Destfino v. Reiswig*, 630 F.3d 952, 958–59 (9th Cir. 2011)). Here, SBD Enterprises' Counterclaim and Third-Party Complaint comprises less than seven pages, outlining a general factual background followed by two claims against Revo and one claim against Golden Bear. In this context, the absence of specific incorporation language does not run afoul of Rule 8(a). Dismissal is not appropriate on this ground.

Second, Golden Bear maintains that SBD Enterprises' general allegations are insufficient because Montana's insurance principal/agent analysis is more nuanced that that stated in *Marie Deonier*. While this argument merits some consideration, it ultimately fares no better. After *Marie Deonier*, the Montana Supreme Court clarified "that the insurance procurement process is logically divided into two steps." *Monroe v. Cogswell Agency*, 234 P.3d 79, 89 (Mont.

5

2010). At the first step, "an agent who accesses the policies of several insurance companies and who is solicited by the client to investigate and select the appropriate insurance company is acting as the agent of the client[.]" *Id.* at 88. It is only at the second step, "once the agency has solicited and procured a specific policy[] that [the] agency becomes an agent of the insurer." *Id.* Put differently, "only after the insurance agency solicits a specific policy from a particular insurer does the principal/agent relationship arise with the insurer." *Id.* at 89. In *Monroe*, for example, the Montana Supreme Court concluded that while the failure to "properly assess the[ insured's] financial status[] or explain how an umbrella policy worked" fell within the first step outlined above, the allegation that the insurance agent "failed to procure the higher policy limits the[ insured] requested[] necessarily implies that [the insurance agent] had solicited the specific [insurance] policy at issue—a contention that clearly falls under the second step of the insurance procurement process and implicates an agency relationship." *Id.* The allegations here present a similar implication.

Here, SBD Enterprises' Counterclaim contains the following allegations regarding the acquisition of the Golden Bear Policy:

> 10.    SBD [Enterprises] informed Revo that it operated a bar business engaged in the sale of alcohol to the public and needed adequate insurance.

> 11.    As part of SBD [Enterprises] purchasing the Policy from Revo, Revo represented to SBD [Enterprises] that the insurance SBD

[Enterprises] was buying would cover claims related to commercial property, general liability, and liquor liability, among other things.

12.    As part of SBD [Enterprises] purchasing the Policy from Revo, Revo represented to SBD [Enterprises] that the insurance SBD [Enterprises] was buying would cover the types of claims asserted in [the Underlying Actions].

13.    SBD [Enterprises] reasonably relied upon Revo to provide the requisite insurance and SBD [Enterprises] relied upon Revo's representations about what insurance it was acquiring.

(Doc. 24). Consistent with *Monroe*, the allegations in paragraph 10 regard the first step of the insurance procurement process; i.e., SBD Enterprises asked Revo to investigate and select the appropriate policy. However, paragraphs 11 and 12 both make representations about the actual policy that SBD Enterprises "was buying." Those allegations "necessarily impl[y] that [Revo] had solicited the specific [Golden Bear] policy at issue, . . . implicat[ing] an agency relationship between [Revo] and [Golden Bear] as a matter of law." *Monroe*, 234 P.3d at 89.

Accordingly, Golden Bear's motion to dismiss SBD Enterprises' Counterclaim for failure to adequately allege an agency relationship is denied.

## II.    Third-Party Complaint – Rule 14(a)

Third-party practice is governed by Rule 14 of the Federal Rules of Civil Procedure. Rule 14(a)(1) states that "[a] defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Under Rule 14(a)(1),

7

> a third-party claim may be asserted only when the third party's liability is in some way depend[e]nt on the outcome of the main claim and the third party's liability is secondary or derivative. It is not sufficient that the third-party claim is a related claim; the claim must be derivatively based on the original plaintiff's claim.

*United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 452 (9th Cir. 1983) (internal citations omitted). While the distinction between "depend[e]nt on" and "secondary or derivative" to the plaintiff's claim is not altogether clear, "[t]he crucial characteristic of a Rule 14 claim is that [a] defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff. The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough." *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 200 (9th Cir. 1988) (quoting Charles Alan Wright et al., 6 Fed. Prac. & P. § 1446, at 257 (1971 ed.)).

Motions to strike third-party complaints are permitted under Rule 14(a)(4), which allows any party to move to strike the third-party claim. Here, Golden Bear argues that SBD Enterprises' Third-Party Complaint against Revo does not meet the requirements of Rule 14(a)(1) because there is an insufficient nexus between the coverage question at issue in Golden Bear's Complaint and SBD Enterprises' negligence claims against Revo. In response, SBD Enterprises argues that Golden Bear's interpretation would make third-party pleading impossible in declaratory

8

judgment coverage actions, subverting both the purpose of Rule 14 and the discretion of the Court. Ultimately, impleader is permitted here.

Golden Bear and SBD Enterprises disagree over whether Rule 14 allows the type of impleader sought here; i.e., whether a defendant to a declaratory judgment coverage action may implead its insurance agent. Courts are likewise divided on this issue, and the Ninth Circuit has not directly addressed it. Some courts have found that "third-party negligence actions against insurance agents in a declaratory judgment action filed by the insurer are viewed as precisely the kind of dependent claim Rule 14 should govern." *Cincinnati Spec. Underwriters Ins. Co. v. Code 3 Sec. & Protec. Servs., Inc.*, 2016 WL 2759152, at *5 (M.D. Fla. May 12, 2016) (citing decisions out of the Northern District of Georgia and the Middle District of Pennsylvania). This "policy-oriented" approach, *Wausau Underwriters Ins. Co. v. Continental Cas. Co.*, 2008 WL 793618, at *4 (E.D. Wash. Mar. 24, 2008), is embodied by the Fifth Circuit's decision in *American Fidelity & Casualty Co. v. Greyhound Corp.*, 232 F.2d 89 (5th Cir. 1956), and the Southern District of New York's decision in *Old Republic Insurance Co. v. Concast, Inc.*, 99 F.R.D. 566, 569 (S.D.N.Y. 1983). In both cases, an excess insurance company sought declaratory relief that it was not liable to its insured for an injured party's claim asserted against the insured, and the insured brought a third-party complaint

9

against the insurance agent or primary insurer.  *Am. Fidelity*, 232 F.3d at 92; *Old Repub.*, 99 F.R.D. at 568.  In both cases, the court

> found that the facts in the  main claim and the third-party action were related closely enough to further the policy of Rule 14 by permitting impleader.  The court did not require an identity of claims or claims resting on the same theory.  Even the facts supporting each claim could differ.  The degree of disparity allowable . . . depended upon whether the advantages gained by joining the third-party defendant outweighed any prejudice which the impleaded party might suffer.

*Old Repub.*, 99 F.R.D. at 569 (discussing *Am. Fidelity*); *id.* at 570 ("Both claims involve an overlap of factual and legal issues—the extent of Old Republic's insurance coverage.").  SBD Enterprises persuasively relies on this line of cases to argue that impleader is appropriate here.

To be sure, some district courts have found that Rule 14(a)(1) prevents third-party complaints like the one alleged here because third-party insurance procurement claims are "related to but not derivative of" coverage claims.  *See Wausau*, 2008 WL 793618, at *4–5; *N. Am. Co. for Life & Health Ins. v. Kim*, 2018 WL 10797907, at *2 (C.D. Cal. Dec. 11, 2018); *U.S Fire Ins. Co. v. Hawaiian Canoe Racing Ass'ns*, 2019 WL 1674900, at *4–5 (D. Haw. Apr. 17, 2019); *see also U.S. Fire Ins. Co. v. Reading Mun. Airport Auth.*, 130 F.R.D. 38, 39 (E.D. Pa. 1990).  These cases appear to turn on the fact that an insurance agent (the third party) could never be liable to the insurance company (the original plaintiff) in the original coverage action.  But this interpretation ignores the reality

that the third-party insurance procurement claims only persist if the original plaintiff (the insurance company) wins the coverage case. Put differently, the claim that an insurance agency failed to procure sufficient coverage only exists if there was, in fact, insufficient coverage. Thus, this is not the case where "regardless of the success or failure of the [original] plaintiff's cause, the [third-party plaintiff's] claims against [the third-party defendant] would persist as an entirely independent claim." *U.S. Fidelity & Guaranty Co. v. Am. St. Bank*, 372 F.2d 449, 450 (10th Cir. 1976). While there is no world in which Revo could be liable to Golden Bear in the coverage action, Revo's liability to SBD Enterprises is both "dependent on" and "derivative" of Golden Bear's coverage case.[2] *One 1977 Mercedes Benz*, 708 F.2d at 452. Thus, SBD's Third-Party Complaint falls within the scope of Rule 14(a).

"The decision whether to implead a third-party under Rule 14 is within the sound discretion of the trial court." *Stewart*, 845 F.2d at 199 (citing *One 1977 Mercedes Benz*, 708 F.2d at 452). "[A] court, called upon to exercise its discretion as to impleader, must balance the desire to afford circuity of actions and to obtain consistent results against any prejudice that the plaintiff might suffer from complications in the case." *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 439 n.6 (3d Cir. 1971). The purpose of Rule 14 is to "promote

---

[2] Notably, neither the term "dependent on" nor "derivative of" appears in Rule 14.

11

judicial efficiency by eliminating the necessity for the defendant to bring a separate action against a third individual who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's original claim." *Sw. Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir. 1986). Although there is some inconsistency across district courts as to the relevant factors for determining whether to allow a third-party complaint, consistent considerations include: prejudice to the other parties, complication of the issues, undue delay, the merits of the underlying action, and the merits of the third-party complaint. *See Irwin v. Mascott*, 94 F. Supp. 2d 1052, 1056 (N.D. Cal. 2000) (citing *Somportex Ltd.*, 453 F.2d at 439 n.6); *Code 3*, 2016 WL 2759152, at *5. These factors weigh in favor of permitting impleader here because of SBD Enterprises' surviving Counterclaim.

As it relates to both prejudice and complexity of the issues, Golden Bear is indeed correct that impleading Revo will complicate matters. The coverage action is one that can likely be resolved at summary judgment, unlike SBD Enterprises' claims of negligence against Revo. However, that conclusion ignores the existence of SBD Enterprises' counterclaims against Golden Bear. Golden Bear would be no more prejudiced by litigating the third-party claims than it would by litigating the counterclaims. As to the timing consideration, given the early stage of the litigation, there is no argument for undue delay.

12

Nor is there any basis to find that either the coverage action or the third-party action entirely lacks merit. Golden Bear has brought a declaratory judgment action regarding the interpretation of the assault and battery exclusion contained in the Golden Bear Policy that is not frivolous or implausible. *Cf. U.S. Liability Ins. Co. v. B and C Casino, LLC*, 4:24-cv-117-DWM, Doc. 28 (D. Mont. July 30, 2025) (finding no coverage following shooting at a bar in light of "Absolute Firearm Exclusion" contained in applicable policy). Similarly, SBD Enterprises seeks to hold Revo accountable for procuring inadequate coverage. *See Bailey v. St. Farm Mut. Auto. Ins. Co.*, 300 P.3d 1149, 1153 (Mont. 2013) ("Under Montana law, it is well established that an insurance agent owes an absolute duty to obtain the insurance coverage which an insured directs the agent to procure." (internal quotation marks omitted)).

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Golden Bear's motion to dismiss (Doc. 25) is DENIED.

IT IS FURTHER ORDERED that SBD Enterprises' motion (Doc. 40) is DENIED as MOOT.

DATED this 7th day of May, 2026.

_____
Donald W. Molloy, District Judge
United States District Court

13