IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| GOLDEN BEAR INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>SBD ENTERPRISES, INC. d/b/a AMERICA WILD WEST, DAVID HAWKINS, BARBARA HAWKINS, and AMERICA FOODS, INC.,<br><br>Defendants. | CV 25–71–BLG–DWM<br>CV 25–73–BLG–DWM<br><br>OPINION and ORDER |

These cases arise out of two firearm-related incidents that occurred at America Wild West bar in Billings, Montana in February 2023. First, on the night of February 11, Beau Harlan Beaumont was fatally shot in the parking lot by another patron, Xavier Buffalo, after the two got in an altercation and Buffalo was removed from the bar. (*See* CV 25–71–BLG–DWM, Docs. 1, 48.) Second, on the night of February 22, bartender David Simmons pointed a handgun at patrons Derek Coffman and Guadalupe Garza in the parking lot and fired at least once, though no one was struck. (*See* CV 25–73–BLG–DWM, Docs. 1, 48.) Subsequently, separate lawsuits were filed by Beaumont's Estate and by Coffman and Garza against SBD Enterprises, Inc. d/b/a "America Wild West" and its

owners David Hawkins, Barbara Hawkins, and America Foods, Inc. (collectively, "SBD Enterprises") in Montana state court ("Underlying Actions"). SBD Enterprises notified its insurer, Golden Bear Insurance Company ("Golden Bear"), of the Underlying Actions, seeking defense of and indemnity for the underlying claims. Golden Bear denied coverage in both instances pursuant to exclusions in the Policy, which was issued to SBD Enterprises and in effect at the time of both incidents.

In May 2025, Golden Bear filed two declaratory judgment actions, seeking a determination that it has no duty to defend or indemnify SBD Enterprises in the Underlying Actions because the assault and battery exclusion in the Policy bars coverage (the "Coverage Actions"). (Docs. 1, 48.)[1] SBD Enterprises subsequently filed a Counterclaim and Third-Party Complaint against its insurance agents alleging negligent procurement (the "Broker Actions"). (Docs. 24, 55.) The Coverage Actions and the Broker Actions have since been severed, and the parties were directed to simultaneously file cross-motions for summary judgment in the Coverage Actions. (*See* Doc. 69.) They have done so, (*see* Docs. 70–74; *see also* Doc. 75 (converting Golden Bear's Rule 12(c) motion into a Rule 56 motion)), and

[1] The docket numbers are generally consistent across the cases. The docket citations used herein refer to the appropriate docket entry in both cases without reference to the case number unless such reference is necessary to avoid confusion.

a motion hearing was held on September 24, 2026. Summary judgment is granted in favor of Golden Bear in both cases.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it impacts the outcome of the case in accordance with governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014). On cross-motions for summary judgment, it is the court's "independent duty to review each cross-motion and its supporting evidence . . . to determine whether the evidence demonstrates a genuine issue of material fact." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1137 (9th Cir. 2001). Each motion is therefore evaluated separately, "giving the nonmoving party in each instance the benefit of all reasonable inferences." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1150 (9th Cir. 2016) (quotation marks omitted).

## BACKGROUND

The following facts are undisputed unless otherwise noted. (*See* Doc. 74.) The descriptions of the underlying incidents are taken from the pleadings in the Underlying Actions.

### I. The Buffalo Incident

On the night of February 11–12, 2023, Beau Beaumont was drinking at the America's Wild West Bar with his friends. (CV 25–71–BLG–DWM, Doc. 48-1 at ¶ 17.) That same night, Xavier Buffalo, who was only 18 years old at the time, was also drinking at the Bar. (*Id.* ¶¶ 18–20.) After Beaumont exited the Bar to return to his vehicle, he was confronted by Buffalo in the parking lot. (*Id.* ¶ 23.) Buffalo pulled Beaumont out of the vehicle and started a fight. (*Id.* ¶ 25.) Security footage of the incident "shows two muzzle flashes going off between Buffalo and Beau[mont]." (*Id.* ¶ 28.) There was no security staff in the parking lot. (*Id.* ¶¶ 24, 27, 31.) The Billings Police Department was notified of the shooting at approximately 1:40 a.m. (*Id.* ¶ 32.) After law enforcement arrived on the scene, Beaumont was transported to the hospital, where he later died. (*Id.* ¶ 34.)

### II. The Simmons Incident

On the night of February 22–23, 2023, David Simmons, a bartender at America's Wild West, brought his personal handgun with him to work because he was scared after the Buffalo Incident. (CV 25–73–BLG–DWM, Doc. 48-1 at

¶¶ 20, 25.) Derek Coffman and Guadalupe Garza went to the Bar that night and played pool, ultimately leaving after an intoxicated woman became belligerent with them. (*Id.* ¶ 21.) The intoxicated woman followed Coffman and Garza out into the parking lot, physically attacking Garza. (*Id.* ¶ 22.) At that point, Simmons exited the Bar, confronted Coffman and Garza, drew his weapon, and fired at them but did not hit anyone. (*Id.*) The Billings Police Department responded shortly thereafter. (*Id.* ¶ 23.)

**III. The Underlying Actions**

Both Beaumont's Estate and Coffman and Garza subsequently sued SBD Enterprises, alleging a pattern of violence and underage drinking at the America's Wild West Bar, and that the Bar's owners knew that it "was an establishment with a well-earned reputation for its lawless culture" and that the parking lot was the site of "repeated[] . . . showdowns, vendettas, gun violence, and other dangerous and destructive behaviors." (CV 25–71–BLG–DWM, Doc. 48-1 at ¶¶ 12, 15; CV 25–73–BLG–DWM, Doc. 48-1 at ¶¶ 11, 14.) Beaumont's Estate alleged five claims against SBD Enterprises: dram shop liability, negligence, punitive damages, survival, and wrongful death. (CV 25–71–BLG–DWM, Doc. 48-1 at ¶¶ 36–63.) Coffman and Garza alleged three claims against SBD Enterprises: negligence, vicarious liability for assault, and vicarious liability for infliction of emotional distress. (CV 25–73–BLG–DWM, Doc. 48-1 at ¶¶ 30–48.)

## IV. The Golden Bear Policy

At the time of both incidents, SBD Enterprises had a Commercial General Liability Policy issued by Golden Bear (the "Policy") that contained both General Liability Coverage and Liquor Liability Coverage. (Doc. 48 at ¶ 43; Doc. 74-2.) The General Liability Coverage portion of the Policy states that Golden Bear "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" caused by an "occurrence."[2] (Doc. 74-2 at 11.) "Bodily injury" is defined as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time." (*Id.* at 23.) An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 24.) The General Liability Coverage portion of the Policy has a $1 million per occurrence and $2 million aggregate coverage limit. (*Id.* at 1.) With respect to the Liquor Liability Coverage, the Policy provides that Golden Bear "will pay those sums that the insured becomes legally obligated to pay as damages because of 'injury' to which this insurance applies if liability for such 'injury' is imposed on the insured by reason of selling, serving or furnishing of any alcoholic beverage." (*Id.* at 27.) The Policy defines "injury" as "damages because of 'bodily injury' and 'property damage', including damages for care, loss of services or loss of support."

---

[2] The Policy is also subject to temporal and geographic limitations not at issue.

(*Id.* at 31.) The Liquor Liability Coverage has separate limits, $1 million for each common cause and $1 million in the aggregate. (*Id.* at 1.)

SBD Enterprises timely tendered the lawsuits in both Underlying Actions to Golden Bear. (Doc. 74-1 at ¶ 10.) On March 24, 2023, Golden Bear denied SBD Enterprises' claim as it related to the Buffalo Incident and refused to provide a defense. (CV 25–71–BLG–DWM, Doc. 74-4.) On January 18, 2024, Golden Bear denied SBD Enterprises' claim as it related to the Simmons Incident and refused to provide a defense. (CV 25–73–BLG–DWM, Doc. 74-4.) In the fall of 2024, SBD Enterprises sent Golden Bear letters requesting it reconsider its coverage determination in both cases. (Doc. 74-5.) Golden Bear responded on January 17, 2025, reasserting its decision to deny coverage and defense. (Doc. 74-6; *see also* Doc. 74-9 (Golden Bear's April 29, 2026 letter).) Golden Bear's denial is premised on the Policy's Assault and Battery Exclusion, which provides that there is no coverage for "'bodily injury' or 'property damage' expected or intended from the standpoint of the insured," (Doc. 74-2 at 52), or

> claims or "suits" to recover damages for "bodily injury," or "property damage," "personal and advertising injury," or medical payments arising from any of the following acts, allegations, or causes of action:
>
> 1. Assault;
> 2. Battery;
> 3. Harmful or offensive contact between or among two or more persons;
> 4. Apprehension of harmful or offensive contact between or among two or more persons;
> 5. Threats by words or deeds;

6. Unlawful restraint or false imprisonment;
7. Negligent hiring or retention of any employee resulting in or pertaining to any act or allegation of any act identified in 1-6 above;
8. Failure to supervise or train any employee resulting in or pertaining to any act or allegation of any act identified in 1-6 above;
9. Negligent entrustment resulting in or pertaining to any act or allegation of any act identified in 1-6 above;
10. Negligent rescue in the aiding or failing to aid any person from any act or allegation of any act identified in 1-6 above, even if the rescue was an independent cause of harm or alleged to be;
11. Negligent maintenance of the premises resulting in or pertaining to any act or allegation of any act identified in 1-6 above;
12. Any actual or alleged failure to prevent, halt, or bar any act identified in 1-6 above, or
13. Indemnity for any act identified in 1-6 above.

The above acts, allegations, or causes of action shall not be deemed an "occurrence" and we have no duty to defend or indemnify an insured regardless of the degree of culpability or intent and without regard to:

1. Whether damages sought are for "bodily injury," "property damage," "personal injury," or "advertising injury";

2. The intent or culpability of an insured, an employee, or "third party";

3. Whether the claim, demand, or suit alleges that an insured acted directly or indirectly to cause damage;

4. Whether the claim, demand, or suit alleges that liability is based upon the doctrine of respondent superior;

5. Whether the claim, demand, or suit alleges that the insured trained, instructed, directed, influenced, or controlled its employees or "third parties" in such a manner so as to cause damage or danger;

6. Whether the acts, allegations, or causes of action identified above occurred on or off the insured's jobsite or designated premises or premises owned, occupied, leased or rented by the insured;

> 7. Whether the claim, demand, or suit alleges that the insured or his officers, employees, or agents failed to prevent, bar or halt any conduct which is the basis of any act, allegation, or cause of action listed in Section B, items 1-13 above, or
>
> 8. Whether or not the claim, demand, or suit alleges indemnity is owed pursuant to a contract.

(*Id.* at 52–53.)

## ANALYSIS

Golden Bear seeks summary judgment based on the Assault and Battery Exclusion, insisting that it bars coverage under the Policy. Golden Bear further argues that America Foods is not an insured under the Policy. Golden Bear is incorrect regarding America Foods. However, because the Assault and Battery Exclusion unambiguously excludes coverage for both the Buffalo Incident and the Simmons Incident, Golden Bear's motion for summary judgment is granted. The focal point of this case is whether Montana's interpretation of the exclusionary language "arising from" distinguishes the coverage question here from the overwhelming authority across multiple jurisdictions affirming the unambiguity of similar assault and battery exclusions. Because the Assault and Battery Exclusion unequivocally addresses the conduct alleged in the Underlying Actions, it is not ambiguous and excludes coverage here.

### A. Montana Insurance Law

As the forum state, Montana law applies in this diversity action. *Med. Lab. Mgmt. Consult. v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 812 (9th Cir. 2002). "Montana law is well-settled that an insurer's duty to defend its insured arises when . . . a complaint against an insured alleges facts, which if proven, would result in coverage." *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004). "The duty to defend is independent from and broader than the duty to indemnify created by the same insurance contract." *Id.* "The insurance company must look to the allegations of a complaint to determine if coverage exists under an insurance policy, thus giving rise to the insurer's duty to defend." *Id.* "Unless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend." *Id.* "[W]here the insurer refuses to defend a claim and does so unjustifiably, that insurer becomes liable for defense costs and judgments." *Id.* (internal quotation marks omitted).

"The interpretation of an insurance contract is a question of law[.]" *United Nat'l Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 214 P.3d 1260, 1265 (Mont. 2009). "[W]hen the language of a policy is clear and explicit, the policy should be enforced as written." *Id.* Giving the words of a contract their ordinary meaning, insurance policies are strictly construed against the insurer in favor of the insured and in favor of extending coverage. *Travelers Cas. & Sur. Co v. Ribi*

*Immunochem Research, Inc.*, 108 P.3d 469, 474 (Mont. 2005). The determination of whether insurance coverage exists is a two-step process. First, the insured must prove that the policy covers the loss incurred. *Id.* at 476. Then, to avoid coverage, the insurer has the burden to show that specific policy language excludes the insured's loss. *Id.* Because exclusions from coverage "are contrary to the fundamental protective purpose of an insurance policy," they must be narrowly and strictly construed. *Newman v. Scottsdale Ins. Co.*, 301 P.3d 348, 355 (Mont. 2013) (internal quotation marks omitted).

### B. Insureds

Golden Bear first argues that America Foods is not an "insured" under the Policy. SBD Enterprises disagrees, arguing that America Foods is an insured under the Liquor Liability Coverage because there is a written commercial lease between America Foods (landlord) and SBD Enterprises (tenant), triggering a specific endorsement that expanded the definition of "insured." SBD Enterprises is correct.

#### 1. Undisputed Insureds

Golden Bear does not dispute that SBD Enterprises and both Barbara and David Hawkins are "insureds" under the Policy. That is consistent with the Policy language. The Declarations page identifies the "Named Insured" as SBD Enterprises d/b/a America Wild West. (Doc. 74-2 at 1.) The Policy further states:

> [i]f you are designated in the Declarations as . . . [a]n organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insured, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

(*Id.* at 28–29.) An "executive officer" is "a person holding any of the office positions created by your charter, constitution, by-laws or any other similar governing document." (*Id.* at 23, 31.) SBD Enterprises is a corporation, and its 2022 and 2023 Annual Reports filed with the Montana Secretary of State identify David Hawkins as its President and Barbara Hawkins as its Vice-President. (*See* Docs. 74-10, 74-11.) Both Underlying Lawsuits allege that the Hawkins were acting both in their individual capacities and in their executive capacities within the scope of their duties for SBD Enterprises at the time of the alleged misconduct. (CV 25–71–BLG–DWM, Doc. 48-1 at ¶¶ 9, 47; CV 25–73–BLG–DWM, Doc. 48-1 at ¶¶ 8, 33.) As a result, SBD Enterprises is an insured, as are David and Barbara Hawkins, insofar as they were acting as SBD Enterprises' officers.

**2. America Foods**

The Liquor Liability Coverage portion of the Policy contains an endorsement entitled "ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS." (Doc. 74-2 at 69.) That endorsement states that it "modifies insurance provided under the . . . LIQUOR LIABILITY COVERAGE PART" and includes "[a]ll entities as required by written contract prior to the occurrence of

loss." (*Id.*) However, that endorsement only includes such entities "with respect to liability arising out of 'your work' for that insured by or for you." (*Id.*) The Policy defines "your work" as "(1) Work or operations performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." (*Id.* at 26.)

Here, America Foods as landlord and SBD Enterprises as tenant have a written commercial lease that requires SBD Enterprises to obtain liability insurance and name America Foods as an additional insured. (Doc. 76-2 at 3.)[3] According to SBD Enterprises, this contract was only recently discovered and therefore was not previously disclosed to Golden Bear. (*See* Doc. 76 at 4 ("That contract was discovered shortly before this brief was filed."); *see also* Doc. 74-9 at 6 (Golden Bear repeatedly stating that no contract had been provided).) With the contract coming to light, the dispute now boils down to whether the "your work" provision has been met. The parties have taken diametrically opposed views of what this provision means. According to Golden Bear, it is only met if SBD Enterprises was working for and furnishing materials or equipment to America Foods. According to SBD Enterprises, it is triggered because America Foods furnished premises and equipment for SBD Enterprises. Golden Bear is correct

[3] This is one of the few documents in the record where the docket number does not align across the two cases. Doc. 76 and its attachments in CV 25–71–BLG–DWM correspond with Doc. 77 and its attachments in CV 25–73–BLG–DWM.

that the "your work" language refers to work performed by SBD Enterprises, not America Foods. However, contrary to Golden Bear's position, such work includes materials, equipment, and operations SBD Enterprises furnished or undertook (or failed to secure or undertake) to secure and maintain the premises, which belonged to America Foods. For example, the commercial lease agreement between SBD Enterprises and America Foods required SBD Enterprises, as the tenant, to perform all interior, exterior, and parking area maintenance and required it "to observe and comply promptly and completely with all statutes, ordinances, rules, orders, regulations, and requirements of Federal, State, County and City governments regulating the use by [SBD Enterprises] of the Leased Property." (*See* Doc. 76-2 at 2–3, 6.) Accordingly, America Foods is an "insured" under the Liquor Liability Coverage portion of the Policy.

### C. The Buffalo Incident

While SBD Enterprises has met its burden of showing that Policy coverage was triggered in the first instance, Golden Bear is correct that coverage is excluded under the Assault and Battery Exclusion.

#### 1. Coverage

There does not appear to be a dispute that Beaumont's death and the Buffalo Incident are covered losses under the general terms of both the Commercial General and Liquor Liability Coverages. SBD Enterprises has therefore met its

burden to show coverage was triggered. *See Travelers*, 108 P.3d at 476. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 74-2 at 24.) "Accident" is not defined in the Policy to distinguish between intentional or unintentional conduct. It is therefore likely ambiguous under Montana law. "An ambiguity exists where the contract, when taken as a whole, reasonably is subject to two different interpretations." *Travelers*, 108 P.3d at 474. Interpretive differences should be resolved from the viewpoint of a layperson untrained in law or the insurance business. *Giacomelli v. Scottsdale Ins. Co.*, 221 P.3d 666, 672 (Mont. 2009). Ambiguous language is interpreted to provide coverage. *Travelers*, 108 P.3d 474. In the context of underinsured motorist coverage, the Montana Supreme Court has held that the undefined term "accident" was ambiguous because while intentional, the act of a tortfeasor can be "unforeseen, unintended, [and] unexpected" from the viewpoint of the victim or insured. *Wendell v. St. Farm Mut. Auto. Ins. Co.*, 974 P.2d 623, 628–35 (Mont. 1999). For the purposes of General Liability Coverage, SBD Enterprises has shown that the Underlying Action alleges bodily injury caused by an occurrence. Likewise, for the purposes of Liquor Liability Coverage, SBD Enterprises has shown that the Underlying Action alleges injury based on its sale, service, or furnishment of alcohol.

**2. Assault and Battery Exclusion**

Golden Bear insists that claims made by the Beaumont Estate against SBD Enterprises fall within two categories of conduct excluded from coverage under the Assault and Battery Exclusion; the first six acts involve the wrongful conduct itself: (1) assault, (2) battery, (3) harmful or offensive contact, (4) apprehension of harmful or offensive contact, (5) threats in words or deeds, and (6) unlawful restraint or false imprisonment, and the remaining acts or allegations are negligence-based and relate to the wrongful conduct identified in (1) through (6). SBD Enterprises disagrees, arguing that the complaint in the Underlying Action contains allegations that fall outside of the Exclusion and that the Exclusion's use of the term "arising from" is ambiguous. Golden Bear has the better argument.

SBD Enterprises first argues that even assuming that the exclusionary language is not ambiguous, Golden Bear has failed to account for "a number of allegations that do not fall within . . . [the] Exclusion, including that the defendants are liable for:" creating a dangerous premises, (Doc. 48-1 at ¶ 12), tolerating "disorderly conditions" that include criminal conduct and gun violence, (*id.* ¶¶ 44, 49), and allowing and regularly permitting minors to consume alcohol, (*id.* ¶¶ 19, 20, 39, 40). (Doc. 76 at 5–6.) However, this conduct is explicitly addressed in the Exclusion, which bars coverage for claims "arising from" the "[n]egligent maintenance of the premises resulting in or pertaining to any" of the enumerated acts and "[a]ny actual or alleged failure to prevent, halt or bar any of the

[enumerated] act[s]." (Doc. 74-2 at 52.) This is "without regard to . . . [w]hether the claim, demand, or suit alleges that the insured trained, instructed, directed, influenced, or controlled its employees or 'third parties' in such a manner so as to cause damage or danger[,]" or "[w]hether the claim, demand, or suit alleges that the insured or his officers, employees, or agents failed to prevent, bar or halt any conduct which is the basis of any act, allegation, or cause of action [enumerated] . . . above." (*Id.* at 53.) As a result, if the Policy language is unambiguous, it bars coverage. Such a conclusion is consistent with the case law addressing similar exclusions across numerous jurisdictions.[4]

[4] *See Hernandez v. First Fin. Ins. Co.*, 106 Nev. 900 (Nev. 1990) (finding exclusion of bodily injury "arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts" unambiguously barred coverage in case where a bouncer assaulted a patron and the bar was sued for negligent hiring); *Britamco Underwriters, Inc. v. Norm's Union St. Inc.*, 1992 WL 210323 (E.D. Pa. Aug. 25, 1992) (finding no coverage under policy exclusion with five enumerated acts and similar "without regard to" language because "the original cause of the harm arose from an alleged assault and battery"); *Jordan v. Paradigm Ins. Co.*, 229 F.3d 1157 (9th Cir. 2000) (affirming a finding of no coverage where policy "shall not apply to claims against an Insured arising directly or indirectly our of an assault and or battery" "irrespective of the legal theory asserted against the insured"); *Jaycie, Inc. v. Acceptance Ins. Co.-Omaha*, 259 F. App'x 967 (9th Cir. 2007) (reversing finding of coverage where policy excluded coverage for bodily injury "arising out of assault and/or battery" where underlying action presented claims under Montana's underage sale of alcohol, negligence, and dram shop statutes); *Montpelier US Ins. Co. v. Boku LLC*, 2014 WL 1246767 (D. Conn. Mar. 24, 2014) (finding exclusionary language "clearly forecloses insurer liability for bodily and personal injury arising out of an assault and/or battery" where a patron was shot by another patron and sued under theories of failure to protect and failure to provide adequate security); *Founders Ins. Co. v. Hamilton*, 2017 WL 3415074 (D.S.C. Aug. 9, 2017) (enforcing policy

SBD Enterprises finds some traction, however, in asking whether the Exclusion is ambiguous under Montana's somewhat nuanced approach to the term "arising from." Indeed, as recently recognized by this Court,

> the Montana Supreme Court has previously held that a commercial general liability policy exclusion for claims "arising out of" the use of an automobile did "not clearly and unambiguously exclude from coverage the theories of liability pled by the plaintiffs," specifically claims for "[n]egligent hiring, training, and supervision and negligent failure to warn." *Pablo v. Moore*, 995 P.2d 460, 464 (Mont. 2000). But the Montana Supreme Court subsequently clarified that the holding in *Pablo* was based on the fact that "the alleged negligent hiring ... stood as an independent source of the plaintiffs' injuries," one that was not

---

exclusion that bars coverage for injuries "arising out of" "the selling, serving or furnishing of alcohol that results in an assault or battery"); *Burlington Ins. Co. v. De La Puente*, 719 F. App'x 615 (9th Cir. 2018) (affirming application of assault and battery policy limits where policy language applied to "not only injuries directly caused by an assault and or battery, but also to injuries arising out of an assault and battery"); *Desalegn v. Cent. Sur. Co.*, 765 F. App'x 191 (9th Cir. 2019) (applying California law to conclude that "[a]n insurer may conclusively establish that there is no potential for coverage through an assault and battery exclusion if the exclusion applies when the insured's claim 'arises from' an assault and battery and no version of the facts exists such that an assault and battery has not occurred"); *Northfield Ins. Co. v. Sandy's Place, LLC*, 530 F. Supp. 3d 952, 964 (E.D. Cal. 2021) ("Although its limitation is broad, the Policy's assault or battery exclusion is nonetheless plain and clear because a reasonable purchaser of insurance would have understood it."); *Evanston Ins. Co. v. Murphy*, 2022 WL 1078123 (9th Cir. Apr. 11, 2022) (holding that assault and battery exclusion did not violated Arizona's "reasonable expectations" doctrine because it was both unambiguous and comprehensible); *Golden Bear Ins. Co. v. Kaldes*, 2024 WL 5247780 (M.D. Pa. Dec. 30, 2024) (focusing on question of intent and finding same policy exclusion at issue here applied when bystander was struck by bullet fired by another patron even though not intended target); *Covington Sp. Ins. Co. v. White*, 2026 WL 2225425 (D.S.C. Aug. 3, 2026) (finding no coverage for underlying claims of negligence related to security and maintenance of premises under similar assault and battery exclusion where performed shot by club patron).

> excluded from coverage. *R.S. v. United Servs. Auto. Ass'n*, 507 P.3d 565, 569 (Mont. 2022).

*U.S. Liab. Ins. Co. v. B & C Casino, LLC*, 2025 WL 2163619, *5 (D. Mont. July 30, 2025). Montana's interpretation of "arising from" is therefore distinct from that of many jurisdictions, which apply a "but-for" test. *See Lib. Surplus Ins. Corp. v. McFaddens at Ballpark LLC*, 116 F. Supp. 3d 447, 458 (E.D. Pa. 2015); *Harvey v. Acceptance Indemn. Ins. Co.*, 2016 WL 3963041, *4–5 (S.D. Ala. Jul. 20, 2016). In those jurisdictions, "[a]n insurer may conclusively establish that there is no potential for coverage through an assault and battery exclusion if the exclusion applies when the insured's claim 'arises from' an assault and battery and no version of the facts exists such that an assault and battery has not occurred." *Desalegn v. Century Surety Co.*, 765 F. App'x 191, 192 (9th Cir. 2019) (applying California law).

While Montana has not adopted a "but for" approach, several recent decisions in this District have emphasized that the ambiguity presented in *Pablo* does not exist if the exclusion at issue specifically delineates the outer boundaries of the excluded conduct. For example, in *B & C Casino*, this Court found no coverage for a parking lot bar shooting under an "Absolute Firearms Exclusion" that excluded "any 'injury' claim or 'suit' regardless of whether the use of firearms is a direct cause, a contributing cause or a concurrent cause of any loss." *B & C Casino, LLC*, 2025 WL 2163619, at *5. In *Foremost Insurance Company v.*

*Howell*, Judge Christensen emphasized that ambiguity of "arising from" is policy-specific and exists "only 'where the contract, when taken as a whole, reasonably is subject to two different interpretations.'" 2026 WL 1960823,*3 (quoting *Gateway Hosp. Grp. Inc. v. Phil. Indemn. Ins. Co.*, 464 P.3d 44, 54 (Mont. 2020)). Thus, whether "arising from" is ambiguous turns on the specific policy language at issue and the contours of the underlying pleading at issue; there is no per se rule. *See Boyne USA Inc. v. Federal Insurance Company*, 2025 WL 2438708, *5 (D. Mont. Aug. 25, 2025) ("[T]he Montana Supreme Court has never held the phrase 'arising from' is per se ambiguous.").

Here, the Assault and Battery Exclusion does not just generally state that it covers claims and injuries "arising from" assault and battery; rather, it enumerates thirteen specific excluded acts and clarifies that it should be applied "without regard" to eight additional factual nuances that may arise in a specific case. (*See* Doc. 74-2 at 52–53.) As discussed above, the tortious conduct alleged in the Underlying Action falls explicitly within the stated terms, e.g., any failures or negligence associated with the "action or alleged failure to prevent, halt, or bar" the assault, battery, harmful or offensive contact, apprehension of harmful of offensive contact, threats, or unlawful restraint/false imprisonment committed by a third party. (*See id.*) As other courts have determined, the "without regard to" language brokers no dispute over the exclusion's broad application. *See Britamco*

*Underwriters, Inc. v. Norm's Union St., Inc.*, 1992 WL 210323, at *3 (E.D. Pa. Aug. 25, 1992).

One niggling concern here is the allegation that SBD Enterprises overserved its patrons or served alcohol to a minor, which also contributed to the injury at issue. At first blush, this would appear to invoke the same "independent cause" ambiguity addressed in *Pablo*. But once again, *Pablo* lacked the specific, clarifying language present here. The harm alleged by the Beaumont Estate is based on conduct that squarely falls within the Assault and Battery Exclusion. *See Founders Ins. Co. v. Hamilton*, 2017 WL 3415074, *5 (D.S.C. Aug. 9, 2017) (finding exclusion applied because separate allegations of dram shop liability "would not be actionable without the assault and battery"); *see also Evanston Ins. Co. v. Murphy*, 2022 WL 1078123, *1 (9th Cir. Apr. 11, 2022) (discussing how clear exclusionary language must be read to temper reasonable expectations of insured). Again, the Assault and Battery Exclusion not only identifies specific tortious acts that are excluded, but also lists negligent acts or omissions associated with those acts. (Doc. 74-2 at 52–53.) The Underlying Complaint links the alleged dram shop violations directly to the assault and battery: "Buffalo's consumption of alcohol was a cause-in-fact *of the aggression he acted upon toward Beau, including Buffalo's impulsive decision to shoot Beau*, and Beau's resulting death." (CV 25–71–BLG–DWM, Doc. 48-1 at ¶ 40 (emphasis added).)

Viewed from the objective perspective of the average consumer, the Assault and Battery Exclusion precludes coverage for the losses alleged by Beaumont's Estate.

**D. The Simmons Incident**

Unlike with the Buffalo Incident, there does appear to be some dispute about whether the Liquor Liability Coverage was triggered by the pleadings based on the Simmons Incident. Regardless, however, there is no coverage based on the same exclusion discussed above.

**1. Coverage**

Golden Bear argues that the Liquor Liability Coverage was not triggered by the pleadings underlying the Simmons Incident because those pleadings do not allege that the injuries arose "by reason of the selling, serving or furnishing of any alcoholic beverage." (Doc. 74-2 at 27.) Indeed, while the Third Amended Complaint in the Underlying Action generally alleges an atmosphere of lawlessness and irresponsible alcohol sales, (*see, e.g.*, CV 25–73–M–DWM, Doc. 48-1 at ¶ 11), Coffman and Garza's injuries are predicated on the bartender, Simmons, not an intoxicated patron, drawing and firing a firearm, (*see id.* ¶¶ 18–22). Thus, Golden Bear persuasively argues that the Liquor Liability Coverage was not triggered for the Simmons Incident.

Golden Bear also argues that it is factually unclear where there was "bodily injury" so as to trigger the General Liability Coverage. However, as argued by

SBD Enterprises at the September 24 motion hearing, such uncertainty means that there is the possibility of coverage under the four corners of the underlying complaint, which triggers the duty to defend. Thus, SBD Enterprises has met its initial burden of showing that General Liability Coverage was triggered.

### 2. Assault and Battery Exclusion

The major difference between the two incidents, at least as it relates to the application of the exclusionary language, is that in the Simmons Incident, the underlying tortfeasor was an employee, not a patron. Thus, the dispositive question is whether that fact makes the exclusion ambiguous or gives rise to coverage under an unambiguous exclusion. Because neither is true, the Assault and Battery Exclusion applies with equal force to the Simmons Incident.

The first question is whether the exclusion is ambiguous as it applies to an employee tortfeasor. The Assault and Battery Exclusion specifically excludes coverage for claims of "[n]egligent hiring or retention of any employee in or pertaining to" an enumerated tort and the "[f]ailure to supervise or train any employee resulting in or pertaining to" an enumerated tort, as well as claims where the liability "is based upon the doctrine of respondeat superior" or "alleges that the insured trained, instructed, directed, influenced, or controlled its employees or 'third parties' in such a manner so as to cause damage or danger." (Doc. 74-2 at 52–53.) It also excludes coverage related to the "[n]egligent maintenance of the

premises resulting in or pertaining to any act or allegation of any act" enumerated in the exclusion or "[a]ny actual or alleged failure to prevent, halt, or bar" an enumerated act. (*Id.* at 52.) Such is the conduct alleged here. Count 1 alleges that SBD Enterprises was negligent in maintaining the premises, permitting violent conduct in their parking lot, failing to abate or eliminate dangerous conditions, and failing to train staff accordingly. (Doc. 48-1 at ¶¶ 30–39.[5]) Counts 2 and 3 allege vicarious liability (or respondeat superior) for assault and infliction of emotional distress. (*Id.* ¶¶ 39–48.) Under the plain language of the Assault and Battery Exclusion, such conduct is unambiguously excluded from coverage.

To be sure, there are cases where courts have found ambiguity where a policy exclusion made it unclear whether employees could have firearms or how certain provisions applied to employees versus patrons. *See, e.g.*, *Underwriters Ins. Co. v. Purdie*, 145 Cal. App. 3d 57 (Cal. 1983) (employee used firearm and court permitted negligent hiring claim to proceed); *Braxton v. U.S. Fire Ins. Co.*, 651 S.W.2d 616 (Mo. Ct. App. 1983) (excluding coverage for loss "arising out of certain enumerated acts done by, for or on behalf of the named insured," including those "arising out of the ownership or use of a firearm" (internal quotation marks omitted)). But the Assault and Battery Exclusion at issue here specifically identifies both "employees" and "third parties" in its express terms. Thus,

[5] The pleadings has two paragraph 39s, the citation is to the first one.

Simmons' status as an employee does not give rise to ambiguity. Viewed from the objective perspective of the average consumer, the Assault and Battery Exclusion precludes coverage for the losses alleged by Coffman and Garza.

## CONCLUSION

Based on the foregoing, there is no coverage under the Policy for either underlying incident. As a result, Golden Bear does not have a duty to defend or indemnify SBD Enterprises. Nonetheless, while Golden Bear's decision to pursue a declaratory judgment action without providing a defense worked to its benefit in this case, its ignorance of Montana law regarding the consequences of that course of action may one day be quite costly. *See Farmers Union*, 90 P.3d at 385.

IT IS ORDERED that Golden Bear's motion for summary judgment (Doc. 70) is GRANTED and SBD Enterprises' motion for summary judgment (Doc. 72) is DENIED. Because the Coverage Actions resolved in favor of Golden Bear, the Broker Actions shall be set for a preliminary pretrial conference by separate order.

IT IS FURTHER ORDERED that, finding no just reason for delay, the Clerk is directed to enter judgment in the Coverage Action in favor of Golden Bear. *See* Fed. R. Civ. P. 54(b).

DATED this 29th day of September, 2026.

Donald W. Molloy, District Judge
United States District Court